ROY M. ROBERTS *v.* STATE OF INDIANA.

[No. 676S185. Filed October 5, 1976.]

*Raymond A. Grunert,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Arthur Thaddeus Perry,* Deputy Attorney General, for appellee.

DEBRULER, J.—Appellant, Roy M. Roberts, was charged by information with commission of a felony while armed with a deadly weapon, to-wit: robbery, Ind. Code § 35-12-1-1 (Burns 1975). After a trial by jury, appellant was found guilty as charged and sentenced to fifteen years imprisonment.

Appellant presents three issues on appeal: (1) whether the State proved the element of putting the victim in fear, necessary to show a robbery, per Ind. Code § 35-13-4-6 (Burns 1975); (2) whether the trial court erred in overruling appellant's motion for a mistrial due to the prosecutor's asking appellant on cross-examination, "Do you remember telling [the detective] that you pulled the gun. . . ."; and (3) whether the trial court erred in overruling appellant's motion for a mistrial due to the investigating detective's volunteered statement: "I asked him what happened in reference to this case.

He was more reluctant to talk about another case but he did tell me. . . ."

The facts show that Charles Van Cook was working at his business about midnight August 27, 1974. A few minutes after midnight on August 28th, he saw the door opposite his desk open slightly. He looked up and saw a person peering in at him. He got up and went to the door to see who he was. When he opened the door wide, he saw the person standing there with a gun on him. The person asked him to unlock the front door, open it, and then lock it again. Cook asked him if he didn't want to just go on out, and he said, "no," that "two men were waiting out there to kill him." He told Cook to give him his money, directing him to take it out of his pocketbook and lay it on a certain chair. Cook did so. There was $232.00 in American currency and $1.00 in Canadian. The person then told Cook he knew there was more money. With his gun four feet or less away from Cook, he had Cook go from room to room and open certain files. He then pushed him to a corner of one of the darker rooms with his gun and told him to stay there five minutes while he searched another part of the offices. Cooked stayed only a minute or so, then started out a side door, where he met a policeman, whom a neighbor had called. Policemen apprehended appellant a few blocks away with a gun and the money. Cook identified him seven to ten minutes after the robbery.

## I.

Appellant argues that there is no evidence that the robbery was accomplished by putting the victim in fear. We disagree. The Indiana robbery statute, Ind. Code § 35-13-4-6 (Burns 1975) reads:

> "Whoever takes from the person of another any article of value by violence or by putting in fear, is guilty of robbery. . . ."

Certainly, in order to prove robbery, the State must prove beyond a reasonable doubt that the taking was accomplished

by violence or by putting in fear. If the State is ■■ proving that appellant put the victim in fear, obviously the victim's state of mind is a material issue. However, there is no requirement that the victim testify that he was put in fear. Rather, it is enough that there is evidence of probative value from which the jury could infer that the victim surrendered his property because he was put in fear. *McTate* v. *State*, (1971) 256 Ind. 55, 267 N.E.2d 76; *Perkins* v. *State*, (1973) 261 Ind. 209, 301 N.E.2d 513; *Cline* v. *State*, (1969) 253 Ind. 264, 252 N.E.2d 793.

Here, the evidence that appellant had a gun, pointed it at Cook, and asked for his money; that Cook was alone and unarmed; and that Cook put the money on the chair as appellant directed permits an inference that Cook was put in fear and gave up his money for that reason. In rebuttal, appellant points to Cook's testimony that, when appellant took him back into the dark corner, appellant told him that he was already in trouble so that it would not hurt him to shoot Cook. "That was when I really began to get a little scared." Appellant argues that this statement is indicative of the fact that Cook had not been made fearful by appellant's gun at the time he put out his money.

We cannot agree that appellant's interpretation of Cook's remark was the one the jury had to accept. The jury reasonably could have understood Cook's statement to mean that, at that point, Cook started to be afraid that appellant would harm him even though he had given him the money, whereas, until then, he had believed that appellant would leave him unharmed if he gave up his money. Cook's statement does not indicate that he was not afraid that appellant would harm him if he refused to give appellant the money. The jury reasonably inferred that Cook gave his money to appellant because appellant had a gun and Cook was afraid of the consequences if he refused.

## II.

Appellant took the stand and testified that he had been on drugs and remembered being arrested. He testified that he had gotten the gun from a friend, probably earlier in the day of the robbery. On cross-examination, the State asked him if he remembered anything about the robbery besides his arrest. He said he did not, that he could not remember going into Cook's office or pulling a gun on Cook or asking him for his money. The State then asked appellant if he remembered having a discussion with Detective Devine. He said that he remembered. The State then asked, "Do you remember telling him that you pulled the gun. . . ." Appellant immediately asked for a hearing outside of the presence of the jury.

At the hearing, appellant moved for a mistrial for the reason that the prosecutor had implied that appellant had made an admission and that that implication would remain with the jurors despite any admonition. The State replied that its purpose in asking appellant if he had made an earlier statement in which he did remember committing the crime was to enable the State to rebut his denial. Appellant replied that the State first had to show its conformance with the *Miranda* requirements and appellant's knowing and voluntary waiver. The court noted that appellant's statements might be admissible for impeachment although not admissible in the case-in-chief. *Harris* v. *New York*, (1971) 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1. The court permitted the State to continue in order to lay a foundation for evidence which would indicate that appellant did remember. The court warned that if the State did not present such evidence on rebuttal, then the court would again consider appellant's motion for mistrial. The State then continued its cross-examination, and appellant stated that he had talked to Detective Devine in jail about the gun, but not about the robbery.

On rebuttal, Devine testified that appellant had asked to have Devine come to see him in jail. Devine came, and ap-

pellant, after hearing a partial statement of his *Miranda* rights, told him that he broke into Cook's business with the intent of burglarizing it, that he had no intention of robbing the man and did not know he was there. He said he opened the door, saw the man sitting there, and started to shut it again. Then it was shut [shoved?] back, and, at that time, he went on in with his gun and robbed the man.

Appellant took the stand to show that, because he was under the influence of drugs, he had acted unconsciously and had no memory of his acts. Apparently, he was attempting to show no *mens rea* at the time of the act. The State could impeach his testimony that he had never remembered anything about the crime or made statements about it to Devine. Devine's testimony did that.

The impeaching questions and rebuttal were proper. If appellant's admission was not admissible in the case-in-chief, it was still admissible to impeach. Once the admission was properly admitted, the State's impeaching question, "Do you remember telling [Devine] that you pulled the gun," was shown to have been properly asked. On appeal, appellant can show no harm from the question followed by his admission. The court did not err in refusing to grant a mistrial.

### III.

In rebuttal, the investigating detective, Clifford Devine, was asked about his meeting with appellant in jail. He was asked if appellant had given any indication that he had understood the *Miranda* rights Devine had orally stated for him. Devine responded:

> "Yes, he said he knew all about it. I asked him, what happened in reference to this case. He was more reluctant to talk about another case but he did tell me. . . ."

Appellant immediately asked that the jury be excused. He then moved for a mistrial because the witness alluded to another case, "the inference being that defendant is currently

some type of criminal." The State suggested that perhaps the jury would not realize the implications. The court questioned Devine, who said that he was thinking of other things, did not realize he could prejudice the jury by bringing in other matters outside of the case, and did not understand that his volunteered remark could mean a waste of court time and expenses. The court then overruled the motion for a mistrial and admonished the jury not to consider the answer for any purpose.

Devine's remark indicated to the jurors that appellant was a suspect in another case and presumably a more serious one since he refused to talk about it. In this case, appellant's identity as the robber was not in doubt, so that the most harmful effect of knowing that he was a suspect in another case was avoided. Appellant argues that the jurors must not have heeded the admonition, since they found him guilty of robbery and sentenced him to more than the minimum ten years. He contends that, but for this remark, the jury would have found the evidence of "putting in fear" to be insufficient and would have believed that appellant was under the influence of drugs, did not remember the crime, and was not responsible. This remark was not relevant to "putting in fear." In that regard, appellant's argument seems to be that, had the jury not been informed of appellant's other case, they would have treated him leniently and acquitted him of robbery in spite of the evidence. With regard to appellant's *mens rea* argument, the remark had some relevance. The jurors, if they ignored the admonition, could have found it less likely that appellant could commit two crimes without criminal intent. On the other hand, since appellant's *mens rea* argument was based on his use of drugs, the jurors could have believed that the drugs influenced his behavior over a period of time when he acted unconsciously on several occasions, so that his defense appeared more credible in this case. The detective's remark about "another case" did not affect the defendant's defenses or strengthen the evidence against him significantly.

Appellant argues also that the remark caused the jurors to sentence him to fifteen years, rather than to the ten year statutory minimum for robbery. We note that the jury gave appellant a sentence fifteen years less than the statutory maximum. Appellant was armed with a gun, threatened the victim's life, and was not a first offender. At trial, appellant admitted a 1971 conviction for joy-riding for which he served six months at the State Farm. We cannot attribute the jury's assessment of a penalty five years greater than the minimum to their hearing Devine's remark.

At the time the trial court denied the mistrial motion and admonished the jury, appellant's counsel remarked that an admonition probably would not be adequate. The trial judge then said, "It may very well be,". Appellant argues that this response indicates that the judge himself believed that an admonition would not suffice, and, nevertheless, did not exercise his discretion when he refused to grant the motion for mistrial. He argues that, since the trial judge himself was not assured that appellant was given a fair trial, we should not consider the merits but should hold that he should have granted a mistrial.

The judge exercised his discretion and ruled against the motion for mistrial. Then, in response to appellant's attorney's disagreement, he stated in effect, "You have a right to appeal my ruling to the Supreme Court. And, it may very well be that the Court will determine that I have wrongly decided that an admonition is adequate. But I have exercised my discretion as seems correct, and we will wait and see." The judge's remark did not indicate that he thought an admonition was not adequate to assure appellant a fair trial. There is no evidence that he acted contrary to his best judgment.

Appellant also cites *White* v. *State*, (1971) 257 Ind. 64, 272 N.E.2d 312, which noted factors courts have considered in determining whether an admonition sufficed. Appellant notes that eleven of the thirteen facts which indicate that an admonition will not suffice are applicable to his case. However, *White* also noted that the best harmless error standard

was stated in *Kotteakos* v. *United States,* (1946) 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557:

"If, when all is said and done, the conviction is sure [sic] that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." 328 U.S. at 764-65. (Footnotes and citation omitted.)

In this case, from what we have discussed in this section, we conclude that the error would have had no influence on the jury's determination of guilt of robbery or assessment of a fifteen year sentence. The trial court did not err in refusing to grant appellant's motion for mistrial.

Finding no error, we affirm the judgment of the trial court.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 355 N.E.2d 243.